**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**-vs-**                                  **Case No.  6:06-cv-1461-Orl-19GJK**

**THEODORE T. NAVOLIO, SEIKO**
**KANEYAMA, GAIL P. KENDALL, IVAN D.**
**SAXE, DOROTHY E. SAXE, OPTION ONE**
**MORTGAGE CORPORATION,**

        **Defendants.**

_____

# ORDER

This case comes before the Court sitting as trier of fact after a one-day trial held on July 9, 2008.  (Doc. No. 101.)  Also pending before the Court is the Motion to Enforce the Settlement Agreement by Plaintiff United States of America.  (Doc. No. 99, filed July 8, 2008.)

This action was brought by the United States (1) to reduce to judgment the unpaid federal income tax liabilities of Defendant Theodore T. Navolio for 1992 and 1993, and (2) to foreclose federal tax liens against two pieces of property in which Navolio possesses an interest.  (Doc. No. 1 at 1-2, ¶ 1, filed Sept. 22, 2006.)  The United States named as Defendants several other individuals possessing interests in these properties: Navolio's wife Seiko Kaneyama, Gail P. Kendall, Ivan D. Saxe, Dorothy E. Saxe, and Option One Mortgage Corporation.  (*Id.* at 2-3, ¶¶ 5-10.)  However, Navolio and Kaneyama are the only Defendants actively opposing this action.[1]

_____

[1]      Defendants Ivan and Dorothy Saxe have disclaimed any interest in the property that is the subject of this litigation.  (Doc. No. 66, filed Jan. 22, 2008.)  Defendant Option One Mortgage and the United States have reached an agreement to subordinate the tax lien to Option One's security interest in one of the properties at issue.  (Doc. No.
                                                    (continued...)

## I.      Motion to Enforce Settlement Agreement

On July 3, 2008, the United States filed a Notice of Settlement in the record of this case. (Doc. No. 97.)  The following day, Defendants Theodore T. Navolio and Seiko Kaneyama informed counsel for the United States, Bruce T. Russell, that there might be a misunderstanding about the terms of the agreement and therefore no settlement.  Mr. Russell then filed a Motion to Enforce the Settlement Agreement on July 8, 2008 (Doc. No. 99), and Defendants filed a Notice of Retraction and Renouncement of Compromise (Doc. No. 100) with the Court.   Both parties appeared before this Court on July 9, 2008 for an evidentiary hearing on the Motion of the United States and, in the event such Motion was denied, trial.  (Doc. No. 101.)  The Court reserved ruling on the Motion and proceeded with a joint evidentiary hearing and trial.  (*Id.*)

### Findings of Fact

During his testimony, Navolio explained that he and Mr. Russell exchanged a number of phone calls at the end of June and the beginning of July concerning a possible settlement of this matter.  In a letter to Mr. Russell dated June 11, 2008 and introduced by the United States at trial,[2] Navolio and Kaneyama listed the following proposed settlement terms:

1.      We would not contest the foreclosure of the Condo.

2.      I, Theodore T. Navolio would sign a judgment in favor of the government for the balance of the amount alleged to be owed to date.

3.      The properties and monies that the government has taken to this point in time will not be further contested.

---

[1](...continued)
64, filed Jan. 18, 2008.)  Defendant Gail P. Kendall has failed to respond or file an appearance in this case, and the Clerk has issued a default against her. (Doc. No. 58, filed June 19, 2007.)

[2]      Trial exhibits shall be cited as "Ex. ___."

4.      The foreclosure action of the final property still in litigation i.e. 24 hibiscus Dr. Ormond Beach Florida [sic] will not be further pursued by the government.

(Ex. 26 at 1.)

Nathan J. Hochman from the United States Department of Justice ("DOJ"), Tax Division, responded to Navolio and Kaneyama's offer to compromise in a letter dated June 26, 2008. (Ex. 27.)  In this letter, Mr. Hochman recited the terms of the offer as follows:

1.      You will sign a consent judgment in favor of the United States for the balance of the amount alleged to be owed for taxable years 1992 and 1993, and you will not [] contest the properties and monies that the United States has levied on to date.

2.      You agree not to contest the foreclosure of the United States' liens on the condominium unit located at 219 S. Atlantic Avenue, # 335, Daytona Beach, in Volusia County, Florida.

3.      The United States will discharge the property still at issue in the litigation, located at 24 Hibiscus Drive, Ormond Beach, Florida, from the tax liens that attach to it.

With the exception of the discharge of lien from this latter property, we understand your offer will not impair the ability of the United States to collect a consent judgment entered in this case.

In addition, we understand that a compromise will resolve all issues still pending between the parties in this litigation, and each party will bear its own costs of litigation, including any possible attorney's fees.

* * *

Upon receipt of your signed acknowledgment, your offer will be processed in accordance with our usual procedures.  Final action will then be taken by the Attorney General or an official designated by him for that purpose.  We are sure you understand that, unless you receive a formal notice of acceptance from this office, the Department of Justice is in no way committed to resolving this matter in the manner set forth above.

(*Id.* at 1-2.)  On June 27, 2008, Navolio and Kaneyama signed a confirmation indicating that these terms accurately reflected their offer to compromise.  (Ex. 28 at 2.)

Later, on July 3, 2008, Mr. Hochman sent Navolio and Kaneyama a letter which stated in part:

> This offer has been accepted on behalf of the Attorney General on the condition that Mr. Navolio agree not to pursue any claim against the United States under 26 U.S.C. § 7433 with respect to the taxes at issue in this case, or otherwise contest the continuing levy on his Social Security income, and to file federal income tax returns for future taxable years as required by law.  Please acknowledge these conditions by signing the acknowledgment below and returning it to this office as quickly as possible.
>
> We will prepare a Consent Judgment for your signature for the balance of the liabilities for 1992 and 1993 remaining at issue in the lawsuit and a proposed Decree of Foreclosure and Order of Sale with respect to the condominium unit described in the complaint.  When we receive the executed Consent Judgment, we will ask the IRS to prepare and file a Certificate of Discharge of Lien from the Ormond Beach, Florida [property] described in the complaint.

(Ex. 29 at 1.)  That same day, Navolio spoke with Mr. Russell on the phone and expressed his concern about the phrase "or otherwise contest the continuing levy on his Social Security income."

According to the undisputed testimony at trial,[3] Navolio, throughout his settlement conversations with Mr. Russell, maintained that the Internal Revenue Service ("IRS") was permitted by statute to levy only fifteen percent of his Social Security benefits.  His understanding was that the agreed upon sale of the condominium unit would pay off the majority of his tax liabilities for 1992 and 1993 and that he would be responsible for the balance.  Navolio believed that the IRS would collect this balance through a fifteen percent levy on his Social Security benefits.

---

[3]     While Mr. Russell suggested in argument that these facts might be disputed, he did not take the stand or otherwise present evidence to dispute Navolio's testimony.

However, the conditional acceptance that Mr. Hochman sent on July 3, 2008 gave Navolio pause.  Navolio felt that if he signed the agreement as written, he would be forever consenting to a one hundred percent levy on his Social Security benefits.  Therefore, he wanted the language "or otherwise contest the continuing levy on his Social Security income" struck from the agreement.  Mr. Russell permitted this alteration, agreeing that the language was perhaps overly broad.  Navolio and Kaneyama then signed an acknowledgment which stated: "The foregoing accurately reflects the amended terms of our offer to compromise the claims of the United States of America in the above-referenced case, as amended through our telephone discussions with Bruce T. Russell of the Tax Division, U.S. Department of Justice."  (Ex. 30 at 3.)  They faxed this confirmation to Mr. Russell.

Despite the confirmation, Navolio was again concerned that his understanding of the terms of the settlement differed from the understanding of the DOJ.  Therefore, on July 4, 2008, Navolio sent an email to Mr. Russell to clarify their agreement. (Ex. 31 at 1.)  The email stated:

> Please see the attached letter.  I just want to be sure that I have the correct understanding.  It was towards the end of our conversations where you made so[me] statements about my social security that got me thinking maybe I was reading something into the compromise letter of June 26, 2008 that was not there.  I need clarification.

(*Id.*)  Navolio further explained in the attached letter that he believed that the phrase "will resolve all issues still pending" in the July 3, 2008 letter meant "that the IRS would cease from the further taking of my social security, based on the pending litigation."  (*Id.* at 2.)  Navolio stated that if this was not the agreement, then he and Kaneyama would "retract and renounce the compromise of June 26, 2008 and the modification of July 03, 2008." (*Id.*)  Upon receiving this email from Navolio, Mr. Russell filed the instant Motion to Enforce the Settlement Agreement.  (Doc. No. 99.)

### Conclusions of Law

As explained by the Eleventh Circuit, "A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law." *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987) (citing *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985)).  "The Court's role is to determine the intention of the parties from the language of the agreement, the apparent objects to be accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement."  *Id.* (citing *K & S Coin Operated Machs., Inc. v. Gottlieb*, 362 So. 2d 38, 39 (Fla. 3d DCA 1978)).

To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element.  *BP Prods. of N. Am. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1133 (M.D. Fla. 2007) (citing *Don L. Tullis & Assocs., Inc. v. Benge*, 473 So. 2d 1384 (Fla. 1st DCA 1985)).  The party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement.  *Id.* (citing *Carroll v. Carroll*, 532 So. 2d 1109 (Fla. 4th DCA 1988), *rev. denied*, 542 So. 2d 1332 (Fla. 1989)).  A trial court's finding that a meeting of the minds occurred between the parties must be supported by competent substantial evidence.  *Id.* (citing *Long Term Mgmt., Inc. v. Univ. Nursing Ctr., Inc.*, 704 So. 2d 669, 673 (Fla. 1st DCA 1997)).

When one of the parties to a contract has made a unilateral mistake, Florida case law follows the minority rule and permits rescission of the contract.  *Roberts & Schaefer Co. v. Hardaway Co.*, 152 F.3d 1283, 1295 (11th Cir. 1998); *Md. Cas. Co. v. Krasnek*, 174 So. 2d 541, 542-44 (Fla. 1965).  For Florida's unilateral mistake doctrine to apply, three conditions must be met: "(1) the mistake

goes to the substance of the agreement, (2) the error does not result from an inexcusable lack of due

care, and (3) the other party has not relied upon the mistake to his detriment." *Roberts & Schaefer*

*Co.*, 152 F.3d at 1291 (citation and internal quotation marks omitted); *Krasnek*, 174 So. 2d at 542-

43.

The first condition is "compelled by the rule that a meeting of the minds must occur in order

to create a contract." *Roberts & Schaefer Co.*, 152 F.3d at 1291. "Where one party misunderstands,

or otherwise makes a mistake that goes to the substance of the agreement into which it enters, no

meeting of the minds occurs, and thus, no contract exists." *Id.*   In the instant case, Navolio

mistakenly believed he was bargaining to resolve all issues relating to his 1992 and 1993 tax

liabilities in the settlement negotiations, including the levy on his Social Security benefits in excess

of fifteen percent.   This mistake was caused in part by the statement "we understand that a

compromise will resolve all issues still pending between the parties *in this litigation*"[4] in the

response to Navolio's offer to compromise from Mr. Hochman.  (Ex. 27 at 1 (emphasis added).)  The

issue of the levy on Navolio's Social Security benefits in excess of fifteen percent was not, however,

an issue still pending in the litigation.  This misunderstanding went to the very nature of the benefit

for which Navolio was bargaining and concerns a material term of the contract.  *See Roberts &*

*Schaefer Co.*, 152 F.3d at 1291-92 (explaining that Florida courts have found that the first element

of the unilateral mistake doctrine is met when one party thinks "that the contract pertains to

something other than it does").  Thus, Navolio's mistake goes to the substance of the agreement, and

the first condition is met.

---

[4]       Though not raised by either party, the phrase "in this litigation" is ambiguous, as it
could modify either "issues" or "parties."

Under the second condition, a party claiming mistake must "demonstrate that the error did not result from an inexcusable lack of due care." *Id.* at 1293.  "Florida courts have interpreted this standard generously to the benefit of the erring party." *Id.*  As demonstrated by Navolio's undisputed trial testimony, Navolio's confusion was a result of the ambiguous language used in the letter from Mr. Hochman and the conversations with Mr. Russell which led Navolio to believe that the Social Security benefits issue would be resolved in the settlement agreement.  Navolio promptly sought to clarify his confusion, as demonstrated by his email to Mr. Russell the day after faxing the confirmation letter to the DOJ.  These circumstances do not suggest a lack of due care.

Furthermore, Navolio had good reason to believe that the agreement had yet to be finalized. The confirmation letter that Navolio signed stated: "We will prepare a Consent Judgment for your signature for the balance of the liabilities for 1992 and 1993 remaining at issue in the lawsuit[.]" (Ex. 30 at 2.)  This indicates that the agreement between the United States and Navolio had not been reduced to a final, written, fully integrated contract.  Navolio's mistake was not the result of an inexcusable lack of due care; therefore, the second condition is met.

Finally, for the third condition to be satisfied, the opposing party must not have relied to its detriment on the unilateral mistake. *Roberts & Schaefer Co.*, 152 F.3d at 1294.  To deny rescission on this ground, the opposing party must have "so changed his position in reliance upon [the mistaken party's] undertaking that it would be unconscionable to rescind the contract or that it would be impossible to restore him to the status quo." *Krasnek*, 174 So. 2d at 543, *quoted in Roberts & Schaefer Co.*, 152 F.3d at 1294.  The United States has not demonstrated how it has in any way changed its position in reliance on the settlement agreement, much less how it relied on the agreement to its detriment.  On the contrary, Mr. Russell appeared on behalf of the United States

before this Court on July 9, 2008, prepared to try the case. Accordingly, the United States did not rely on the agreement to its detriment, and the third condition is met.

Since all three conditions have been satisfied, Florida's unilateral mistake doctrine applies. A rescission is warranted in this case; therefore, the Court declines to enforce the settlement agreement. Since the Motion of the United States to enforce the settlement agreement is denied (Doc. No. 99), the Court proceeds to a decision on the merits of the case.

## II.     Bench Trial

In its Order denying the Motion for Summary Judgment by the United States, the Court found that there were two factual issues remaining for determination at trial: (1) whether the IRS sent a statutory notice of deficiency to Navolio, and (2) whether the IRS used reasonable diligence in ascertaining Navolio's last known address. (Doc. No. 87 at 7-13, filed June 11, 2008.) Subject to these factual determinations, the Court found no triable issues involving either the amount of assessment or the propriety of foreclosure on the relevant properties. (*Id.* at 13-16.)

After consideration of the evidence presented at trial and the submissions by the parties, and after making determinations on the credibility of the witnesses, the Court enters its Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, as follows.

### Findings of Fact

Defendant Theodore T. Navolio had taxable income in 1992 and 1993 but failed to pay federal income taxes or file any tax returns for those years. (Ex. 5 at 1.) Therefore, pursuant to its standard operating procedures, the IRS filed Substitutes for Returns for the 1992 and 1993 tax years on Navolio's behalf. (Ex. 8 at 3; Ex. 9 at 3.)

On April 15, 1994, Navolio was arrested for an unrelated matter and was initially incarcerated in Tampa, Florida. He was then moved back and forth between Tampa and a Brooksville, Florida facility. In 1995, Navolio was relocated to a prison in South Carolina. Finally, on February 26, 1996, Navolio was released to Las Vegas, Nevada. During this time, Navolio failed to send any notice to the IRS of his change in address or relocation from Florida to Nevada.

On October 11, 1995, the IRS sent by certified mail a statutory notice of deficiency for tax years 1988 through 1993 to Navolio at three different addresses: (1) 662 George Miller Circle, Port Orange, FL 32127; (2) 604 Mockingbird Lane, Alatamonte (sic) Springs, FL 32714; and (3) 850 Muary Road Box 97, Orlando, FL 32804. (Ex. 24 at 1.) Pursuant to established procedures, the IRS sent the notice to Navolio's last known residential address in Port Orange, Florida. The IRS also researched other possible addresses for Navolio by searching the IRS database, called "Masterfile," reviewing Navolio's case file for recent correspondence or third party payor information, and requesting "postal tracers" from the United States Postal Service. The two additional addresses to which the notices were sent were the product of this additional investigation.

After receiving no response from Navolio, on March 11, 1996, the IRS assessed Navolio's 1992 and 1993 income tax liabilities. (Ex. 8 at 2-3; Ex. 9 at 2-3.) As of March 3, 2008, Navolio's total federal income tax liability for 1992 and 1993, including interest and penalties, is $154,381.44. (Ex. 8 at 2; Ex. 9 at 2.) Approximately six months after assessment, on September 26, 1996, the United States filed a Notice of Federal Tax Lien against Navolio with the Clerk of the Circuit Court of Volusia County, Florida for tax years including 1992 and 1993. (Ex. 11.) The United States refiled this Notice on March 7, 2006. (Ex. 12.) The lien attached to the two properties still at issue in this case. The first is referred to as the "First Parcel" and is a piece of real property purchased

by Navolio on July 13, 2001.[5]  The second is referred to as the "Condominium Unit" and was purchased by Navolio on April 15, 2003.[6]  The United States seeks to foreclose these tax liens pertaining to taxable years 1992 and 1993.

**Conclusions of Law**

According to the statutory scheme set forth in detail in this Court's Order denying Summary Judgment (Doc. No. 87 at 4-6), the mailing of a notice of deficiency is a statutory prerequisite to a valid tax assessment.  26 U.S.C. § 6213(a).  The notice must be sent by registered or certified mail to the deficient taxpayer's last known address.  *Id.* § 6212(b)(1); *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir. 1992); *Williams v. Comm'r of Internal Revenue*, 935 F.2d 1066, 1067 (9th Cir. 1991)); *United States v. Labato*, No. 6:97-cv-900-Orl-28JGG, 2002 WL 1770804, at *5 (M.D. Fla. June 18, 2002).

A taxpayer's "last known address" is "the address to which the IRS, in light of all the reasonable facts and circumstances, reasonably believed the taxpayer wished the notice to be sent." *United States v. Bell*, 183 B.R. 650, 652 (S.D. Fla. 1995).  In determining the taxpayer's "last known address," the IRS must exercise "reasonable diligence."  *Id.*  The focus is on "the information available to the IRS at the time it issued the notice of deficiency."  *Id.*  Generally, the IRS is deemed to have used reasonable diligence if "it mailed the deficiency notice to the address contained on the

---

[5]     Lot 124, Ormond-By-The-Sea Plat 6, according to the plat thereof, recorded in Map Book 11, Page[s] 282 and 283 of the Public Records of Volusia County, Florida. (Exs. 13-20.)

[6]     Unit 335, Daytona Inn Beach Resort, a condominium, according to Declaration of Condominium recorded in Official Records Book 4360, page[] 4884, and amended in Official Records Book 4368, page 2695, and amended in Official Records Book 4367, page 3313 and amended in Official Records Book 4493, page 737, of the Public Records of Volusia County, Florida.  (Exs. 21-23.)

taxpayer's most recently filed tax return." *Ward v. Comm'r of Internal Revenue*, 907 F.2d 517, 521 (5th Cir. 1990). The taxpayer has the burden of providing "clear and concise" notice to the IRS of an address change. *Pugsley v. Comm'r of Internal Revenue*, 749 F.2d 691, 693 n.1 (11th Cir. 1985).

The burden of the IRS to determine the last known address and the burden of the taxpayer to notify the IRS of a change in address are separate and independent of each other. *E.g.*, *Sicari v. Comm'r of Internal Revenue*, 136 F.3d 925, 928 (2d Cir. 1998). As the Second Circuit Court of Appeals has explained, "This is not to say . . . that the IRS has no obligation to attempt to ascertain the taxpayer's new address; where it is shown that the IRS has failed to exercise reasonable care in determining an address, a notice sent to the wrong address will not satisfy the statutory requirement, and the 90-day period will not begin to run." *Id.* Similarly, a decision from the trial court the Southern District of Florida has stated:

> The IRS must also exercise reasonable diligence in determining [the last known] address, separate and distinct from the taxpayer's burden to provide clear and concise notification. What constitutes reasonable diligence will vary according to the information available to the IRS, including any notice from the taxpayer. However, the test focuses not on the information that the taxpayer provides but the information which the IRS possesses. More importantly, the test is fact specific and must be addressed on a case by case basis.

*Bell*, 183 B.R. at 653. The court continued, "While the taxpayer should bear the burden of notification of the new address, the IRS cannot simply ignore that which it obviously knows." *Id.* In the case of an incarcerated taxpayer, if the IRS has specific information concerning the taxpayer's whereabouts, this information may constitute sufficient notice of the incarcerated taxpayer's prison address. *E.g.*, *Broomfield v. Comm'r of Internal Revenue*, 89 T.C.M. (CCH) 1466, 2005 WL 1444131, at **4-5 (T.C. 2005) (citing cases).

The Court concludes that the IRS mailed a statutory notice of deficiency to Navolio's last known address.   Navolio's arguments that the IRS did not exercise reasonable diligence in determining his address are unavailing.   While incarcerated, Navolio moved numerous times to multiple detention facilities.   Upon his release, Navolio relocated to Nevada.   At no point did Navolio submit a change of address form or provide notice of his relocation to the civil division of the IRS.   While Navolio was in contact with agents in the IRS criminal division during this time, IRS agents Cathleen Curry and Roger D. Maurice testified at trial that the civil division and the criminal division of the IRS do not share information as a general rule.   This testimony was not refuted by Navolio, and Navolio did not provide any evidence that the civil division knew of his whereabouts during his incarceration.   Therefore, the Court concludes that the IRS exercised reasonable diligence by following its standard procedures to obtain Navolio's last known address.

Since the Court resolves the two remaining factual issues in favor of the United States,[7] the United States is entitled to foreclose its tax liens against the First Parcel and Condominium Unit in the amounts assessed by the IRS.

## CONCLUSION

Based on the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.   The Motion by Plaintiff United States of America to Enforce the Settlement Agreement (Doc. No. 99, filed July 8, 2008) is **DENIED**.

---

[7]   Navolio filed a Notice of Additional Authority with the Court on August 1, 2008. (Doc. No. 103.)  He attached a case from a Bankruptcy Court in Montana, *Anderson v. Internal Revenue Serv. (In re Anderson)*, 250 B.R. 707 (Bankr. D. Mont. 2000), involving the maximum permitted continuous levy of Social Security benefits under 26 U.S.C. § 6331(h)(1).  The Social Security Benefits levy issue, however, was not preserved for trial and is not currently before the Court.  (*See* Doc. Nos. 35, 79.)  The case therefore has no bearing on the instant decision.

2.      The assessments made by the Internal Revenue Service against Defendant Theodore T. Navolio dated March 11, 1996 for tax years 1992 and 1993 are declared valid.

3.      Defendant Theodore T. Navolio is indebted to the United States for unpaid federal income tax liabilities for the years 1992 and 1993 in the total amount of $154,381.44 as of March 3, 2008, plus further interest and statutory additions as allowed by law, to the date of payment.

3.      The federal tax liens, notice of which has been filed in the public records of Volusia County, Florida, are declared valid and attach to all property and to rights to property of Defendant Theodore T. Navolio, including:

a.      The real property referred to as the "First Parcel," more particularly described as Lot 124, Ormond-By-The-Sea Plat 6, according to the plat thereof, recorded in Map Book 11, Page[s] 282 and 283 of the Public Records of Volusia County, Florida;[8] and

b.      The "Condominium Unit" described as Unit 335, Daytona Inn Beach Resort, a condominium, according to Declaration of Condominium recorded in Official Records Book 4360, page[] 4884, and amended in Official Records Book 4368, page 2695, and amended in Official Records Book 4367, page 3313 and amended in Official Records Book 4493, page 737, of the Public Records of Volusia County, Florida.

---

[8]     Pursuant to the agreement between the United States and Defendant Option One Mortgage (Doc. No. 64), the lien on this property is subordinate to the security interest of Option One (Ex. 19).

4.      Within eleven days from the date of this Order, Plaintiff United States shall file in the record a Proposed Final Judgment setting forth the remaining balance of Defendant Theodore T. Navolio's tax liabilities for 1992 and 1993 to be recovered by the United States of America as well as a Proposed Decree of Foreclosure and Order of Sale for the properties detailed in paragraphs 3(a) and 3(b) above.[9] Defendants have ten (10) days thereafter in which to object.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August _6_, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[9]     Contemporaneously with filing these documents, the United States shall email copies of these filings in WordPerfect format to the Chambers email address of the undersigned Judge at chambers_flmd_fawsett@flmd.uscourts.gov.